647 So.2d 469 (1994)
Michael CHELETTE, Plaintiff-Appellant,
v.
SECURITY INDUSTRIAL INSURANCE, Defendant-Appellee.
No. 94-815.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*470 George Stubbs Bourgeois Jr., Opelousas, for Michael Chelette.
Lelia Anne Collier, Lafayette, for Security Indus. Ins.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
YELVERTON, Judge.
This worker's compensation case arises out of a one-car accident on Louisiana Highway 742 south of Port Barre. On August 5, 1991, Michael Chelette was delivering a policy of *471 insurance on behalf of his employer, Security Industrial Insurance Company, when he lost control of his car in a curve. He was injured. Security denied worker's compensation benefits pursuant to La.R.S. 23:1081, claiming that Chelette was intoxicated at the time of the accident.
After a hearing on September 23, 1993, the hearing officer found that Chelette was intoxicated at the time of the accident and that this intoxication was a cause of the accident. Chelette appealed the judgment claiming that the hearing officer erred in these findings. Chelette also claims the hearing officer erred with respect to evidentiary matters and in ruling that medical benefits were not at issue at this trial. This case was consolidated with the case of Insurance Company of North America v. Michael Chelette, 647 So.2d 475 (La.App. 3rd Cir.1994) (Our Docket No. 94-814). The reasons for judgment as to both cases are set forth below.

INTOXICATION
The hearing officer found that Chelette was abusing prescription drugs and that he was intoxicated by these drugs at the time of the accident. Chelette claims that this finding was error.
The sole defense was based on the claim of intoxication at the time of the accident. Pursuant to La.R.S. 23:1081, an employee is not entitled to worker's compensation benefits if his injury was caused by his intoxication at the time of the accident unless the intoxication was a result of activities in pursuit of the employer's interests or if the employer procured the intoxicating beverage or substance and encouraged its use during the employee's work hours.
For proof of intoxication the statute creates a presumption in favor of the employer in given circumstances. An employee is presumed intoxicated if his blood alcohol level reaches a certain percentage, or if there is evidence of use of a nonprescribed controlled substance. In the present case, Chelette was neither intoxicated by alcohol nor by the use of a nonprescribed controlled substance. The employer thus did not have the benefit of the presumption. Section 6 of the statute, however, authorizes the introduction of "other competent evidence bearing upon the question of whether the employee was under the influence of alcoholic beverages or any illegal or controlled substance." Therefore, it was the burden of the employer to prove, without the benefit of any presumption, that Chelette at the time of the accident was under the influence of prescribed drugs. La. R.S. 23:1081(8) expressly provides that the burden of proof is by a preponderance.
Justice Lemmon in a concurring opinion in Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216 (La.1994), summarized appellate courts' review of facts versus review of the sufficiency of the evidence. He explained that the manifest error rule is a standard used by appellate courts to resolve conflicting factual evidence; it is not a standard for determining sufficiency of the evidence. The manifest error rule relates purely to questions of fact; sufficiency of the evidence, on the other hand, is a question of law, and the standard for determining sufficiency of the evidence relates to questions of law, or to mixed questions of law and fact. Rosell v. ESCO, 549 So.2d 840 (La.1989); Woods v. Borden's Perkins Div., 610 So.2d 219 (La.App. 3d Cir. 1992), not considered 612 So.2d 91 (La.1993).
The ultimate issue in this case is whether or not the evidence was sufficient to prove by a preponderance that Chelette was intoxicated. That is the only fact in dispute. The underlying circumstances are not disputed. Whether they add up to a finding of intoxication is a question of law which this court must make on its own without resort to the manifest error rule.
In support of its case Security introduced only circumstantial evidence. While Security had the burden of proving intoxication and causation by a preponderance of the evidence, it was only necessary that the evidence show that intoxication and causation were more probable than not. This burden may be satisfied by direct or circumstantial evidence. Circumstantial evidence will suffice if it excludes other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that Chelette was *472 intoxicated and the accident was caused by his intoxication. Fontenot v. Fontenot, 635 So.2d 219 (La.1994).
Security introduced the testimony of Louisiana State Police Officer Michael Ardoin. He investigated this accident. Officer Ardoin testified that Chelette told him he was taking medication for a heart condition. He felt that the cause of the accident was Chelette's failure to negotiate the curve due to excessive speed, and that the heart medication had an effect on his judgment of speed and distance from the curve. Officer Ardoin testified he was not positive if Chelette said he was taking heart medication and that it was speculation whether the medication would have an effect on Chelette to cause the accident. In fact Chelette was not taking heart medication.
Security also introduced the records from Cypress Hospital in Lafayette where Chelette was admitted after his stay in Opelousas General Hospital following the accident. Chelette was admitted to Cypress for drug abuse. The notes of Dr. Lyle LeCorgne in the hospital record reveal that on the day of the accident Chelette had taken fewer pills and was drinking less than on other occasions. The records also state that Chelette acknowledged that his reaction time was slowed by the drugs in his system. On admittance to the hospital Chelette was taking up to five Lorcet a day, and was using Xanax every other day and about twenty Margesic H per week. Chelette told Dr. LeCorgne that he had been taking five to six Xanax tablets a day.
Security also introduced the records of several doctors who had given prescriptions to Chelette just prior to the accident. Records of the prescriptions filled by Miller's Service Drugs and Wal-Mart were introduced. Chelette had received several prescriptions from Dr. Emile Ventre, a general practitioner, for Xanax and Margesic H throughout 1991. Closer to the accident on August 3, 1991, Chelette had a prescription filled for twenty .5mg Xanax. He had previously had the same prescription filled on July 22 and for Margesic H on July 20.
Chelette had also seen Dr. Wilfred Briley, another general practitioner. On August 5, 1991, Dr. Briley prescribed thirty lmg Xanax, four 500mg Duricef, ten Lorcet Plus and some Silvadene cream. These prescriptions were filled that same day, which was the day of the accident.
On that same day, Chelette had also seen Dr. James McCarthy, a family practitioner. At this visit, Dr. McCarthy noted that Chelette was somewhat heavy-tongued, but did not note what that impression meant. He prescribed more Xanax that day. He had earlier prescribed thirty 2mg Xanax on July 31. Dr. McCarthy had diagnosed Chelette with a substance abuse problem on June 25, 1991.
Chelette also had prescriptions filled on July 30, 1991 for thirty Xanax 2 which had been prescribed by Dr. Richard Lafleur. He was given Percodan # 30 by Dr. John Watermeir on July 29, 1991.
Chelette testified he had taken only 1 mg of Xanax and one Lorcet Plus the day of the accident which occurred a little after 3:00 p.m. To prove that he was not intoxicated by this amount of drugs in his system, Chelette offered the testimony of Dr. Stanley Hoover, a general practitioner and an expert in addiction medicine. Dr. Hoover knew that Chelette had a long standing problem with addiction. However, he was of the opinion that one Xanax and one Lorcet Plus would not create an intoxicated condition. He felt that it was more likely that Chelette was experiencing withdrawal with fewer drugs in his system. According to Dr. Hoover, it was withdrawal and not intoxication that impaired his driving ability.
We find that the evidence falls short of proving that Chelette was intoxicated at the time of the accident. All it proves is that Chelette had a drug problem. It does not prove that he was intoxicated on these drugs at the time of the accident. A review of the Cypress records, Dr. Hoover's testimony, and the other testimony indicates that it was more probable than not that Chelette was experiencing withdrawal at the time of the accident. Withdrawal from drugs is not intoxication by drugs.

*473 DISABILITY
Also before the hearing officer was the extent of Chelette's disability. The hearing officer did not reach this issue because she found that Chelette was intoxicated and not entitled to benefits. Since the record is before us we will make a determination of the extent of Chelette's disability and duration. La.Code Civ.Proc. art. 2164.
Chelette was transferred to Opelousas General Hospital following the accident where he was treated by Dr. Mayer. He suffered from a nondisplaced fracture of the seventh rib on the left, a severe compression fracture of his second lumbar vertebra, a sprain of the left ankle, and multiple facial abrasions and contusions. He remained in the hospital for five days.
Dr. Mayer continued to treat him until June 17, 1992. In the interim he sent Chelette to see Dr. John Jackson, a neurosurgeon, on January 27, 1992. Dr. Jackson confirmed the severe compression fracture of the L2 vertebra. The testimony of these doctors was the only testimony regarding Chelette's disability.
Only Dr. Mayer expressed an opinion on when Chelette would be able to work. According to Dr. Mayer, Chelette would not be able to work at all until early February 1992. The evidence is clear and undisputed that Chelette was temporarily totally disabled from August 5, 1991 to February 1, 1992.
Dr. Mayer would have released Chelette to return to part-time work with restrictions on February 1. The main restriction was no prolonged sitting. Chelette was still partially disabled from February 1, 1992 to June 17, 1992, when he reached maximum medical improvement. He was not working and had not attempted to return to work during that period. Chelette proved by clear and convincing evidence that his work-related injury disabled him to the extent that he was unable to earn 90% or more of the wages he received at the time of the injury. Security introduced no evidence that Chelette was able to perform work that was offered to him or was available to him in the employee's or the employer's community or a reasonable geographic region. Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52 (La.1993). Therefore, Chelette was entitled to supplemental earnings benefits from February 1, 1992 to June 17, 1992. See Rachal v. Crown Equipment Co., 640 So.2d 730 (La.App. 3d Cir.1994).
There is no dispute in the record that Chelette reached maximum medical improvement on June 17, 1992 and would not be entitled to any worker's compensation benefits beyond that date. Thompson v. Capital Steel Co., 621 So.2d 1101 (La.App. 1st Cir. 1992).

BENEFITS
Chelette was employed by Security in March 1991. He was paid a monthly salary. His salary was $627.64 in March, $1,208.56 in April, $1,561.42 in May, $1,791.65 in June and $1,656.27 in July. Since he started in March which probably was not a full month, we will not include that month's salary in our determination of benefits.
Chelette's monthly salary was based on a collection percentage off his route plus a commission for anything he sold. Pursuant to La.R.S. 23:1021(10)(d), Chelette's average weekly wage is determined by his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four. Since there is no evidence as to how many days Chelette worked, we will assume he worked Monday through Friday for a total of 88 days in April through July.
Chelette's gross earnings were $6,217.90. Chelette's average weekly wage for the purpose of determining benefits would be $282.63. [($6,217.90\88) × 4]. Plugging $282.63 into La.R.S. 23:1221(1)(a) and multiplying by 662/3. Chelette's weekly benefits for the period of temporary total disability would be $188.42.
For the purposes of supplemental earnings $282.63 is plugged into La.R.S. 23:1221(3)(a) and multiplied by four and three-tenths to equal $1,215.31. Since Chelette did not earn any wages during this period of partial disability *474 his monthly benefits during this period would be $810.25 ($1,215.31 × .6667).

MEDICAL BENEFITS
Chelette claims the trial court erred in ruling that medical benefits were not at issue at this trial. Chelette tried to introduce evidence of nonpayment of medical benefits in this case for emergency medical treatment rendered as a result of injuries sustained in this accident.
At the beginning of the trial, the hearing officer stated that the issues to be decided at this trial were "whether or not the plaintiff was intoxicated at the time of the accident; if so, whether the intoxication caused the accident and any resulting injury and if not, the extent of disability ...". Both parties agreed. Later in the trial, Chelette tried to introduce evidence of the medical bills from Opelousas General Hospital. The hearing officer then reserved the right of Chelette to file another 1008 form to place the medical bills at issue as well as any claim for penalties and attorney's fees.
In Prudhomme v. Iberville Insulations, 633 So.2d 380 (La.App. 3d Cir.1994), this court held that by limiting the issues at the first hearing, the hearing officer reserved to the claimant the right to bring another action. Since the hearing officer in the present case limited the issues to intoxication, causation and disability, she did not allow introduction of evidence which pertained to medical benefits. Chelette's recourse was to file another claim for medical benefits.
Chelette also raised as error the hearing officer's exclusion of other one-vehicle accidents at this same location. Additionally, he claims the hearing officer erred in not invoking the presumption of adverse testimony as a result of Security's failure to call its expert, Dr. Donald Harper concerning the results of tests performed on blood drawn from Chelette at the hospital. There is no need for a discussion of these assignments in view of our decision that Security failed to prove that Chelette was intoxicated at the time of the accident.

PENALTIES AND ATTORNEY'S FEES
Chelette claims that he is entitled to penalties and attorney's fees for failure to pay weekly benefits since there was no credible evidence to prove that Chelette was intoxicated at the time of the accident. An employer is liable for statutory penalties for withholding benefits without evidence to "reasonably controvert" the employee's right to compensation and medical benefits. La. R.S. 23:1201. Additionally, attorney's fees are recoverable if the employer acted arbitrarily, capriciously, or without probable cause in refusing to pay benefits. La.R.S. 23:1201.2.
In the present case Security's evidence that Chelette was intoxicated was scant if any at all. Basically, the evidence was that Chelette had a lot of prescription drugs, probably had a drug problem, and had a one-car accident. It takes a quantum jump from that evidence to make a finding that he was intoxicated at the time of the accident.
We find that Security did not reasonably controvert Chelette's claim to benefits and was without probable cause to pay the benefits that he was due. Chelette is entitled to an award of 12% of the unpaid benefits. Pursuant to Dubois v. Diamond M Co., 559 So.2d 777 (La.App. 3d Cir.), writ denied, 563 So.2d 866 (La.1990), Chelette would also be entitled to penalties for failure to pay medical expenses, as provided by Acts 1988, No. 938, § 1, effective July 1, 1989. However, medical benefits were not at issue at this trial.
We award $3,000 as attorney's fees for the work done so far at the trial level and on appeal.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is reversed. Judgment is rendered awarding $188.42 a week for temporary total disability for the period of August 5, 1991 to February 1, 1992. Supplemental earnings benefits are awarded in the amount of $810.25 per month from February 1, 1992 to June 17, 1992.
Penalties are awarded in the amount of 12% of the unpaid benefits and attorney's fees are awarded in the amount of $3,000. Costs of this appeal are assessed to Security *475 Industrial Insurance Company and Insurance Company of North America.
REVERSED AND RENDERED.