liSEXTON, Judge.
In this appeal from an action for damages for cutting of timber without consent, plaintiff, Emma Long Rhodes, claims that the trial court erred in refusing to award treble damages and that inadequate damages were awarded. We affirm.
FACTS
In September 1993, James Minor Rhodes, an employee of Auger Timber Company, supervised timber cutting on property owned by the Carroll family. The Carroll tract adjoined property owned by Emma Long Rhodes. During the process of cutting the *674 trees, Auger crossed the boundary between the properties and cut trees on Mrs. Rhodes’ property.
Mrs. Rhodes filed suit against Auger Timber Company and James Rhodes (her nephew), seeking damages for the cutting of her trees without her consent and claiming entitlement to treble damages pursuant to the provisions of LSA-R.S. 3:4278.1. The court found treble damages unwarranted, but awarded plaintiff damages in the amount of $5,615.84 and attorney fees of $1,881.50. Plaintiff has appealed.
DISCUSSION
LSA-R.S. 3:4278.1 provides in part:
Art. 4278.1. Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney’s fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for |2three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
(Emphasis added).
Relying on these provisions, the trial judge determined that the evidence failed to demonstrate that defendants “either willfully or intentionally violated Subsection A of the statute.” He, however, applied the “good faith” provisions of Subsection C to the resolution of this matter noting:
Apparently, there was a barbed wire fence at one time discernible on the east side of plaintiffs property. The fence has since fallen and grown in between trees and is barely discernible at all. Although defendant Rhodes observed portions of the fence prior to cutting, he believed the flagged line to be the boundary line....
- Defendant Rhodes did not blatantly ignore the plaintiffs property rights but made efforts to establish those rights.... Since the circumstances show that it was reasonable for defendant Rhodes to proceed as he did, no treble damages are due.
Plaintiff urges the application of Carroll v. International Paper Company, 94-302 (La.App.3d Cir. 11/02/94), 649 So.2d 474, writ denied, 94-2924 (La. 02/17/95), 650 So.2d 259 in brief. We distinguish Carroll on two grounds. First, the circumstances in Carroll occurred prior to the 1992 revision of La.R.S. 3:4278.1(C) which read:
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed. However, the provisions of this Section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
Notably, the exception clause in subsection C, added in 1987, reflects ajjtrend toward a less stringent standard for the application of treble damages than that which had previ *675 ously existed. Nevertheless, it did not reflect the further slackened standard added by the 1992 revisions, providing that the reasonableness of the violator’s actions are to be considered before liability attaches.
Secondly, we find Carroll factually distinguishable. There, a forester relied upon a hand-drawn plat instead of making a more detailed inquiry. Also, the timber agreement was vague. An International Paper representative, attempting to physically locate the property, misread a metal plate marking the corner of the plaintiffs’ property, which led to the harvesting of fifty acres of timber from the wrong property.
In the instant case, Mrs. Rhodes had her timber thinned five years earlier but stopped short of her property line. Although Mrs. Rhodes claimed that this occurred because she did not want to further increase her tax liability for that year, Thomas Foster, a senior forest technician for International Paper who supervised the thinning stated that he was uncomfortable locating the boundary because the old fence was down in places. Foster painted a blue cutting line some distance back from the old fence.
James Rhodes stated that because the property description he obtained from the courthouse was vague, he made a physical inspection of the property noticing the old fence line, which he described as “one strand of barbed wire nailed to some trees.” Rhodes was aware that old fences are frequently found in the woods and do not always indicate ownership or boundary lines.
Rhodes also found a tree line that corresponded to the area that Mrs. Rhodes previously had thinned and felt it was the boundary between the Carroll and plaintiff tracts. Rhodes acknowledged that he did not contact his aunt or the Carrolls before cutting and that he did cut across the old dilapidated fence line which was the boundary between the properties.
|4In Carroll, the boundary was clearly marked by a metal plate which was misread by the representative of the timber company. In the present case, even the testimony of plaintiffs expert demonstrates that the boundaries were not clearly marked. As the trial court noted, the only marking of the boundary remaining was the old fence line which was barely evidenced. Indeed, our review of plaintiffs exhibits 6-9, the photographs of the site, reveal evidence of wire in only one picture, gleaned only after close scrutiny.
The trial court’s determination that defendants did not violate LSA-R.S. 3:4278.1(0) is a factual determination. Reasonable evaluations of credibility and inferences of fact should not be disturbed on review even where conflict exists in the testimony. Chambers v. Graybiel, 25840 (La. App.2d Cir. 6/22/94), 639 So.2d 361, 367, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377. A court of appeal may not set aside a trial court’s or jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. In light of the evidence, we cannot find this determination clearly wrong.
Plaintiff also argues that the trial court’s damage award was inadequate and that it should have included amounts for large machinery to repair the fence, for loss of her right to determine the time and condition of timber sales, for deprivation of the opportunity to enjoy the property in its prior state and for mental anguish.
Much discretion is left to the judge or jury in the assessment of damages. Each case is different and the adequacy or inadequacy of the award should be determined by the facts or circumstances of the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), U.S. cert. denied sub. nom, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Plaintiffs rely on Baglio v. Gulf Coast Casualty Insurance Co., 617 So.2d 197 (La.App. 3d Cir.1993), in which the Baglios were awarded $1000 for loss of esthetic value and $1000 in general damages. In Baglio, however, the plaintiffs purpose in owning the property was to protect the view from their home. Further, they apprised cutters of the line before the majority of damage was done. These factors are not present in this ease. *676 Further, defendants did not contest the amounts presented by plaintiff and the trial court awarded plaintiff all amounts for which evidence was presented. We, therefore, can not say that under the circumstances of the case, that the trial court limitation of recovery to actual damages was an abuse of discretion.
The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
BROWN, J., dissents in part with reasons.