692 So.2d 687 (1997)
Mary Bankens ISDALE, et al., Plaintiffs-Appellees,
v.
Bobby CARMAN, et al., Defendants-Appellants.
No. 96-1435.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1997.
*688 Edgar Perkins, Jr., De Quincy, Maurice L. Tynes, Lake Charles, for Mary Bankens Isdale, et al.
Charles A. "Sam" Jones, III, De Ridder, for Bobby Carman, et al.
David Jefferson Williams, Lake Charles, for Bailey Wagner.
Before DECUIR, AMY and GREMILLION, JJ.
GREMILLION, Judge.
This suit involves the wrongful cutting of timber from property owned by the plaintiffs, Mary Bankens Isdale, Alma Jane Isdale Brown, and Billy T. Brown (Browns). The trial court rendered judgment in favor of the Browns, finding the defendants, Bobby Carman, Hughes Wood Products, Inc., and Bailey Wagner, liable in solido for damages and attorney's fees. The defendants appeal. We affirm in part and reverse in part.

FACTS
The Browns own a twenty acre tract of land in Calcasieu Parish, which is described as the north half of the southeast quarter of the northwest quarter of section 6, township 9 south, range 9 west, located south of High Hope Road. In March 1995, the Browns were seeking bids for the timber located on the property, when they learned that the tract had already been clear cut. They approached the Louisiana Office of Forestry and Agriculture for help in the investigation of their loss as a timber theft. As a result of their investigations, the Office of Forestry learned that Hughes Wood had recently cut timber on property adjacent to the Brown tract.
Carman, a forester employed by Hughes Wood, had negotiated and purchased the timber rights to seventy-four acres of land in Calcasieu Parish. Tract A, a twenty acre tract, was located due south and adjacent to the Brown tract. Tract B, another twenty *689 acre tract, was due east of Tract A, while Tract C, a thirty-four acre tract, was due south of Tract B. Carman flagged the property lines to the three tracts and Wagner, a logging contractor for Hughes Wood, cut the timber in July 1994.
In March 1995, Carman was contacted by Charles Earl, the regional manager for enforcement of the Office of Forestry, about the timber cut on the Brown tract. Carman revisited the tracts and determined that the Brown tract had in fact been cut. He then contacted Earl and told him that he would contact the Browns.
The Browns filed suit against Carman, Hughes Wood, and Wagner after they failed to respond within thirty days of receiving demand letters for payment. In their petition, the Browns alleged that pursuant to La.R.S. 3:4278.1(B), the defendants were liable for treble damages and attorney's fees for willfully and intentionally cutting the timber located on their tract. Even if the defendants were in good faith, the Browns alleged they were still liable for treble damages and attorney's fees because they should have known they were cutting the timber without the Browns' consent. La.R.S. 3:4278(C). The Browns also alleged that they were entitled to damages for trespass and conversion, which included costs for clearing the land and reforestation.
A trial on the merits was held on January 16-17, 1996. After the close of testimony, the trial court, in oral reasons, held that the Browns proved by a preponderance of the evidence that Wagner cut their timber, and that he was an employee of Hughes Wood. Although the trial court found that Wagner acted in good faith, it held that he should have known that his actions were without the consent of the Browns. The trial court further held that had Carman gone back to the tracts after the logging began, he would have seen that Wagner was cutting timber on the wrong tract. Thus, the trial court held that under La.R.S. 3:4278.1(C), the Browns were entitled to damages equaling three times the fair market value of the timber taken off their property ($6,580.00 x 3 = $19,740.00). The trial court also awarded them attorney's fees of $3,500.00. The issue of damages for site preparation and reforestation were taken under advisement.
On January 22, 1996, the trial court issued a supplement to its oral reasons, finding that under general tort law, the Browns were entitled to recover the costs of reforestation. The Browns were awarded $1,890.00 for site preparation, seedlings, and labor. A judgment was signed on March 5, 1996, awarding the Browns a total of $21,630.00 for damages and $3,500.00 for attorney's fees. Motions for a new trial were filed by all three defendants, but were denied by the trial court. This appeal followed. We affirm in part, reverse in part, and render accordingly.

ISSUES
On appeal, Carman and Hughes Wood raise six assignments of error. In their first and second assignments of error, they allege that the trial court erred in finding the evidence sufficient to render judgment against them. They allege in their third and fourth assignments of error that the trial court erred in awarding treble damages and attorney's fees. In their fifth and sixth assignments of error, Carman and Hughes Wood allege that the trial court erred in awarding damages for reforestation but, if proper, erred in the amount awarded. In his appeal, Wagner asserts that there was insufficient evidence presented at the trial on the merits for the trial court to find that he cut the Browns' timber.

SUFFICIENCY OF THE EVIDENCE
All three defendants question whether there was sufficient evidence presented for the trial court to render judgment against them. In a concurring opinion in Ambrose v. New Orleans Police Dep't Ambulance Serv., 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216, Justice Lemmon noted the difference between an appellate court's review of fact versus sufficiency of the evidence.
The manifest error rule is a standard used by appellate courts to resolve conflicting factual evidence; it is not a standard for determining sufficiency of the evidence. The manifest error rule relates purely to questions of fact; sufficiency of the evidence, on the other hand, is a question of *690 law, and the standard for determining sufficiency of the evidence relates to questions of law, or to mixed questions of law and fact.
In application, the manifest error rule becomes part of the standard for determining sufficiency of the evidence. The reviewing court first resolves any factual conflicts by application of the manifest error rule which dictates that the appellate court should not disturb the express or implied factual findings of the trier of fact. (Footnote omitted). Accordingly, the reviewing court views all evidence in the light most favorable to the party who prevailed in the trial court, and then determines whether the evidence, consisting of the undisputed facts and of the disputed facts thus viewed under the manifest error rules, was sufficient to preponderate in favor of a conclusion that the plaintiff had proved every element of his cause of action.
Id. at 223-224.
The only evidence introduced by the Browns was circumstantial evidence. In order to prove their cause of action by a preponderance of the evidence, the Browns were required to prove that more probable than not Wagner cut their timber. Either direct or circumstantial evidence will satisfy this burden. Chelette v. Security Indus. Ins., 94-815 (La.App. 3 Cir. 12/7/94); 647 So.2d 469, writ denied, 95-0072 (La.2/9/95); 649 So.2d 416. Circumstantial evidence alone will satisfy the burden if it excludes other reasonable hypotheses with a fair amount of certainty so that it is more probable than not that Wagner cut the Browns' timber for Hughes Wood. Id.
In support of their claim, the Browns relied heavily on testimony from Jimmy Coleman, a deputy sheriff who lives on High Hope Road, north of the Brown tract. He testified that in July 1994, he saw two groups of loggers cutting timber south of his property. Coleman saw one group, composed of African-Americans, cutting timber on the northeast corner of the Brown tract, working towards the west. The other crew, composed of white loggers, was cutting timber on property owned by Erbon Wise, further south of the Brown tract. Coleman testified that the African-American crew cut the timber with power saws and used two yellow skidders to drag the logs, which they loaded onto trucks at the site of an old oil well, located east of his property. After loading the logs, the crew used both High Hope Road and Anthony Ferry Road to leave the location. He testified that the white crew also loaded their logs out of the oil well site and exited onto High Hope Road. He stated that their equipment consisted of two skidders and they also used power saws.
Coleman testified that the African-American crew was the only crew of loggers that he saw cutting on the Brown tract. He testified that the crew crossed a high line area, located in the southwest corner of the Brown tract, and cut a narrow strip of hardwood before suddenly stopping. He further stated that property due south of the Brown tract was also cut at this time, but could not recall by whom. Just prior to the timber on the Brown tract being cut, Coleman testified that he saw a man marking the property lines and then another marking trees with spray paint.
Carman testified that, after negotiating the purchase of the timber and locating a right-of-way, he marked the perimeter of the three tracts with bright pink flags two days before the loggers moved in. Carman described the northeast corner of Tract A, which was the southeast corner of the Brown tract, as marshy, stating that he was only able to tie the flags onto bushes. After marking the lines, Carman testified that he walked them with Wagner and Jeff Brady, another forester with Hughes Wood. Brady was to mark the saw logs on the tracts and check on the loggers. Carman showed Wagner the marshy area and warned him about crossing the line there. This ended Carman's involvement with the three tracts.
After learning that the Brown tract had been cut, Carman revisited the three tracts. He stated that his flagging was still in location on the north line of Tract A, although there was not much left in the marshy area. He also testified that he observed skidder tracts on the Brown tract, which entered from the south across the marshy area.
*691 In his deposition prior to trial, Carman testified that the property line in the northeast corner of Tract A could have become blurred if Wagner's skidders ran over the flag marked bushes in the marshy area. Carman stated that he thought Wagner used new cutters on this job and he opined that they could have run over the flags. However, at trial, Carman testified that he later learned Wagner had not used new cutters and that he denied crossing the property line and cutting the Brown tract. Carman did not believe that Wagner cut the timber, stating that it was possible someone else used their right-of-way to cut the property after Wagner left the area. When he revisited the tracts, Carman testified that he saw old flagging on the Brown tract along the north and east line. He also stated that he had cruised the Brown tract in 1992 in anticipation of making a bid for the timber, and was familiar with the tract.
Wagner, a contract logger with Hughes Wood for thirty-five years, testified that he walked the property lines with Carman prior to cutting the timber. He stated that there was another crew cutting in the area at the same time. His crew was composed mainly of African-Americans, while the other crew was white. Wagner stated that his equipment consisted of a skidder, a loader, and two trucks, and that both the skidder and the loader were orange in color. His cutters used power saws to cut the timber. Wagner testified that he began cutting the timber on the east side of the three tracts, working his way west. When cutting on the east side, he stated that his log set was located near the northeast corner of Tract B. He moved the log set to within a few hundred feet of the southeast corner of the Browns tract after he started cutting towards the west. Wagner testified that he mainly operated the loader at the log set, so that when it was located in the southeast corner, he was always in a position to see whether any of his men crossed onto the Brown tract. He denied that any did. He stated that he only cut up to the Browns' property line, but never beyond it.
Wagner testified that they never loaded their logs at the oil well site because it would have been too far to skid the logs, but that their right-of-way crossed that location. He also stated that they never used the Anthony Ferry road, as testified by Coleman. A Gulf States Utility high line diagonally crossed Tract A. Wagner testified that his crew never crossed the high line to cut the timber located on the western side of the high line. He stated that they were unable to cut the entire three tracts because time ran out on their contract. They obtained an extension on their contract, but were still unable to finish cutting the timber since it rained several times during that period. Wagner testified that when they finished cutting the tracts, the timber on the Brown tract was still standing. He denied ever telling anyone that he crossed the property line and cut that timber.
The Browns introduced the testimony of two officers with the Office of Forestry, Richard Thompson and Charles Earl. The both testified that they were notified about the possible theft in March 1995, and that they visited the property. Thompson and Earl were shown the property by Coleman, after which they determined that the property adjoining the Brown tract had recently been flagged and the timber removed. After determining that Hughes Wood had cut the adjoining tract, Earl contacted Carman and set up an appointment for him to meet with Thompson. However, the appointment was canceled when Carman contacted Earl and told him that he had walked the tract with his logger and determined that they had cut it by mistake. Carman stated that he would contact the Browns and settle the matter. Earl testified that he informed the Browns of what he had learned. He stated that at that point his office was no longer involved in the case since it was now a civil matter.
Erbon Wise testified that he went with Alma Brown to view the property in March 1995, after she contacted him about the loss of their timber. He stated that his property's northeast corner touches the southeast corner of the Brown tract, and that he had selectively cut his property the previous year. He testified a forester manages his property and he never complained that the logging crew had cut timber from the wrong *692 property. Wise stated that the crew brought his timber out across his own property, and not by way of High Hope Road.
Alma testified that she learned their property had been clear cut when she requested bids on the timber, in March 1995. After visiting the property with Wise, she contacted the Office of Forestry about the theft of their timber. From them she learned that Hughes Wood had cut timber on the property adjacent to hers. She testified that she contacted an attorney to investigate the matter and that he sent out two demand letters to Carman, Hughes Wood, and Wagner. When no response was received within thirty days, they filed this suit.
Benson Sylvest, a licensed land surveyor testifying on behalf of the defendants, stated that he surveyed and staked the south line of the Browns' tract on January 3, 1996. He also walked both the east line to the northeast corner and the west line to the northwest corner of the Brown tract. He stated that he saw old flagging along the east line of the Brown tract and in the northeast corner. Sylvest stated that Carman's line along the north line of Tract A was thirty to thirty-five feet south of where the actual line was located, and that he found only three of Carman's flags along the south line, but none along the marshy area. He testified that some timber on the Brown tract was cut west of the power line, but few trees west of the power line and south of the Brown tract were cut. He stated that along the south line of that tract, close to the high line, he saw stumps that appeared to have been sheared off instead of cut with a power saw, but he did not recall seeing any tracts or ruts left by shearing machines across the Browns' south line.
Sean Ray Thibodeaux, a real estate appraiser and forestry consultant, testified that the Brown tract was clear cut and that some of the stumps in the tract appeared to have been cut with a shearer, due to the appearance of the stump and because there was no saw dust in the area. He further stated that if there were ruts in the area, he could not tell the difference between those made by a shearer or a skidder.
On direct examination, Carman testified that he knew the property line laid down by him did not encroach onto the Brown tract. He further stated that after he was contacted by Earl, he did not walk the tract with Wagner, or tell Earl that he had. Carman testified that Wagner never told him that he had cut the timber and that from the location of the log set near the southeast corner of the Brown tract, Wagner would have seen whether his men crossed the property line.
Charles Alfred, one of Wagner's cutters, testified they only used chain saws to cut the timber off of the three tracts because Wagner did not own a shear. He testified that he went back to the three tracts in January 1996 and, after observing the property, stated that they had not crossed onto the Brown tract, nor did they cross the high line area to cut the timber located west of there. Alfred testified that they had been shown the south line and had never crossed it. He stated when they left that location, the timber on the Brown tract was still standing.
In oral reasons, the trial court held that the Browns proved that their tract was probably cut at the time Hughes Wood was in the area, in July or August 1994. The court placed great weight on the testimony of Coleman, a disinterested witness, that between the time Wagner finished cutting and the Browns discovered their tract cut, he saw no other crew cutting in that location. The trial court placed no weight on the difference between the color of the skidder seen by Coleman (yellow) and that used by Wagner (orange). The trial court also easily reconciled the discrepancy between Coleman's testimony that the crew hauled their logs out of the oil well site and Wagner's testimony that his log set was located further south since Wagner's right-of-way ran past the oil well site.
In finding it probable that Wagner cut the Brown tract, the trial court also placed great weight on Carman's deposition testimony. Carman testified that there was an event which might have messed up the flagging between Hughes Wood's tract and the Brown tract. He stated that because the flags were tied to marsh grass in the northeast corner and Wagner used new cutters for the job, *693 they could have run over the flags and crossed the property line. The trial court found it important that Carman, even after Wagner told him that he had not cut the timber, offered this opinion, which the trial court found to be a plausible, reasonable explanation. The trial court offered another explanation for why Wagner cut the wrong tract, stating that because Carman testified there was old flagging on the Brown tract, Wagner's crew could have seen it and thought that they were on the correct side of the property line when in fact they were across the property line.
The trial court found that all of the defendants acted in good faith, but held that they should have known they were cutting the Browns' timber. The trial court held that since Carman, an employee and the principal person involved in this particular operation, knew where the Brown tract was, Hughes Wood and Wagner should also have known. The trial court further found that based on economic reality, Wagner was an employee of Hughes Wood. As a result of this finding, the trial court rendered judgment in favor of the Browns, holding that Carman, Hughes Wood, and Wagner were liable in solido for treble damages and attorney's fees under La.R.S. 3:4278.1(C) and (D).
In supplemental reasons, the trial court addressed several issues which had been omitted from its oral reasons. It held that the defendants failed to establish that the entire Brown tract had been shear cut since only Sylvest and Thibodeaux testified on this and their testimony failed to prove the fact by a preponderance of the evidence. The trial court found it important that the defendants failed to develop this line of questioning earlier through the testimony of Carman, whom the trial court found to be very experienced. Further, the trial court found no evidence that the tract was rutted in straight lines, as the testimony of Thibodeaux indicated would occur if the tract was cut with a shearer.
After reviewing the record in its entirety, we find no manifest error in the trial court's findings of fact. Turning to the issue of whether the evidence was sufficient to render judgment against all three defendants, we affirm in part and reverse in part. After reviewing all of the evidence in a light most favorable to the Browns, we find the evidence insufficient to prove Carman liable to the Browns, but sufficient with regards to Hughes Wood and Wagner.
The trial court held that Carman would have realized that Wagner was cutting the Brown tract if he had gone back after the cutting started. However, the evidence showed that once Carman flagged the property lines and walked them with both Wagner and Brady, he had no further duties with regards to this job. The testimony revealed that once the logging began, Brady took over from Carman. Based on this testimony, we find the evidence insufficient to render Carman liable to the Browns pursuant to La.R.S. 3:4278.1.
With regards to Hughes Wood and Wagner, we find that there was sufficient evidence for the trial court to hold them liable. Viewing Coleman and Carman's testimony in a light most favorable to the Browns, we find that more probable than not Wagner cut the timber located on their tract. Since there was no manifest error in the trial court's finding that Wagner was an employee of Hughes Wood, and there was sufficient evidence to find that Wagner cut the Brown tract, we find that there is sufficient evidence to render both liable under La.R.S. 3:4278.1(C) and (D).
For the foregoing reasons, the judgment of the trial court is reversed and set aside with regards to Carman, but is affirmed with regards to Hughes Wood and Wagner.

TREBLE DAMAGES AND ATTORNEY'S FEES
In its third and fourth assignments of error, Hughes Wood asserts that the trial court erred in awarding treble damages and attorney's fees pursuant to La.R.S. 3:4278.1. That statute provides in pertinent part:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or *694 lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
....
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
We find no merit with Hughes Wood's argument that the trial court erred in awarding treble damages. As found above, Carman marked and walked the property lines of the three tracts with Wagner, pointing out to him the marshy area and warning him not to cross the line there. Wagner testified that he knew where the line was located. A later survey by Sylvest showed that the north line of tract A, as marked by Carman, was thirty-five feet south of the actual line. Thus, had Wagner cut along the flagged lines set by Carman, he would have stayed well within the property lines. Taking all of this into consideration, it was reasonable for the trial court to find that Wagner should have known that his actions were without the consent of the Browns.
We find no merit with Hughes Wood's argument that Rhodes v. Rhodes, 677 So.2d 673 (La.App. 2 Cir. 6/26/96) is controlling on this issue. Instead, we agree with the trial court in Carroll v. International Paper Co., 94-302, p. 7 (La.App. 3 Cir. 11/2/94); 649 So.2d 474, 478, as adopted by this court and by the dissent in Rhodes:
It is incumbent upon the professionals in the timber industry to take the necessary steps to assure proper location in conjunction with the cutting activities. INTERNATIONAL PAPER COMPANY has access to timber cruisers, surveyors, and other personnel whose obligation to the company and the public is to see that the right tract is cut. A mistake of this magnitude is exactly what the statute contemplated when it provided for treble damages.
The judgment of the trial court awarding the Browns treble damages is affirmed.
Hughes Wood next argues that the trial court erred in awarding attorney's fees because both demand letters sent by the Browns requested amounts in excess of the amount awarded by the trial court. We find no merit with this argument. La.R.S. 3:4278.1(D) provides:
If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
This statute requires an owner to make demand upon a good faith violator for payment. If the violator fails to pay within thirty days, then the owner is entitled to reasonable attorney's fees. Here, the Browns made demand on Carman, Hughes Wood, and Wagner, and all failed to pay within the thirty day delay. Thus, the Browns complied with the statute and were entitled to attorney's fees. The Browns hired a forester to estimate the amount of timber cut from their property and the fair market value of that timber. These amounts were used by the Browns in their demand letters. Although the trial court did not utilize these amounts in its award, the Browns should not be penalized for failing to guess exactly what the trial court would award. The statute does not require them to be that fine in their calculations, and we feel this requirement would place too onerous a burden on plaintiffs. The judgment of the trial court awarding reasonable attorney's fees is affirmed. Hughes Wood's third and fourth assignment of error are dismissed.

REFORESTATION
In its fifth and sixth assignments of error, Hughes Wood argues that the trial court's awarding of damages for reforestation is inequitable because the Browns are *695 receiving a greater amount than they would have received had they selectively cut the tract as they intended. We find no merit with this argument. The costs of reforestation are recoverable if supported by the record. Gewin v. Willamette Industries, Inc., 406 So.2d 730 (La.App. 3 Cir.1981); Evans v. B.R. Bedsole Timber Contractors, 521 So.2d 837 (La.App. 2 Cir.1988); Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La. App. 3 Cir.1980).
Bill Mercer, a forester, testified that the tract contained no pine seedlings or close older pines which could produce seedlings to reseed the entire tract. Mercer testified that he suggested the Browns consider having the Office of Forestry burn the tract to rid it of grass and treetops leftover from the logging, which would hinder replanting. He stated that this would cost $7.00 per acre, for a total of $140.00. Mercer also testified that he suggested the Browns have the tract replanted since there was no means of natural regeneration. He testified that this would cost $30.00 per acre for seedlings, for a total of $600.00, and from $50.00 to $65.00 per acre for labor for a total of $1,000.00 to $1,300.00. The trial court awarded the Browns $140.00 for site preparation, $600.00 for seedlings, and $1,150.00 for planting, for a total of $1,890.00. Considering that the trial court has great discretion in the awarding of damages, we find no error in this award. The judgment of the trial court is affirmed and these assignments are found to be without merit and dismissed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it finds Hughes Wood Products, Inc. and Bailey Wagner liable to the Browns for damages and attorney's fees for wrongfully cutting their timber. The judgment of the trial court finding liability on the part of Bobby Carman is reversed and set aside. It is now ordered, adjudged, and decreed that judgment be rendered in favor of Carman and against the Browns. The costs of this matter are assessed one-third to the plaintiffs-appellees, Mary Bankens Isdale, Alma Jane Isdale Brown, and Billy T. Brown, and one-third each to the defendants-appellants, Hughes Wood Products, Inc. and Bailey Wagner.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.