STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1389


MARVIN W. BUXTON

VERSUS

IOWA POLICE DEPT.


\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-05071
SAM LOWERY, WORKERS' COMPENSATION JUDGE
\*\*\*\*\*\*\*\*\*\*


GLENN B. GREMILLION
JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Glenn B. Gremillion, and J. David Painter, Judges.

REVERSED, RENDERED,
AND REMANDED.

Marcus Zimmerman
4216 Lake Street
Lake Charles, LA 70605
(337) 474-1644
Counsel for Plaintiff/Appellant:
    Marvin W. Buxton

Christopher R. Philipp
P. O. Box 2369
Lafayette, LA 70502-2369
(337) 235-9478
Counsel for Defendant/Appellee:
    Iowa Police Dept.

GREMILLION, Judge.

In this contentious workers' compensation suit, the plaintiff, Marvin Buxton, appeals the judgment of the workers' compensation judge finding that he failed to rebut the presumption of intoxication provided by La.R.S. 23:1081 and dismissing his claim against his employer, the Iowa Police Department, with prejudice. We reverse, render, and remand.

**FACTS**

Buxton, a corporal with the Iowa Police Department (Iowa), was involved in a work-related accident on May 7, 2004, when his police unit was struck by a motorcycle as he attempted to block Thompson Street in Iowa. The Lake Charles Police Department had requested assistance from the Iowa Police Department in stopping the driver of the motorcycle, who had refused to pull over for speeding in Lake Charles. The driver evaded the Lake Charles Police by heading east toward Iowa on Highway 90 at speeds in excess of 110 miles per hour. When he reached Iowa, the driver turned south on Thompson Street. Buxton, who was traveling north on Thompson Street, turned his unit to block both lanes of travel. While attempting to pass to the left of Buxton, the driver of the motorcycle hit the front passenger side of the police unit with his bike, causing him to fall into the ditch. Buxton claimed that he hit his head on the door of his unit as he attempted to exit it prior to the impact.

This incident occurred at approximately 2:00 a.m. After the accident, Buxton continued working until his shift ended at 6:00 a.m. At that time, he was told by the Chief of Police, Charles Ipes, to undergo a drug screen. The facts conflict as

to what occurred next, however, the end result is that the test was never conducted. Buxton claimed that he was unable to find an open facility to perform the test. He also said that he was wary of undergoing the drug screen because he was taking his wife's pain medication for an abscessed tooth. Later that morning, he was told by Chief Ipes to go to the Pathology Laboratory in Lake Charles to take the test. However, shortly after arriving there, Buxton and his wife left because he was in a great deal of pain and felt that it would take too long to undergo the test. They returned to Iowa, where Buxton was seen by his family doctor, Dr. Young Bin Kang, who diagnosed him as suffering from a left hand contusion, headache, and neck pain. His La.R.S. 23:1208 Medical History Questionnaire states that prior to the accident, he was taking Hydrocodone and Carisprodol, a muscle relaxer. Buxton has not worked since the accident.

Prior to the accident, Buxton was the custodian of the evidence room at the police station. Afterwards, Chief Ipes turned the job over to Officer Jimmy Horner, who inventoried the evidence room. In doing so, he discovered discrepancies in the evidence located there and that an amount of money was missing. Chief Ipes requested that the Calcasieu Parish Sheriff's Office step in and perform an investigation into the matter. Pursuant to a warrant, a search was made of Buxton's home, where numerous evidence envelopes were found, along with marijuana, other drugs, and drug paraphernalia. On the advice of his counsel, Buxton resigned from the Iowa Police Department on June 9, 2004. Thereafter, charges were filed against him for malfeasance in office, obstruction of justice, and possession of CDS I: marijuana. Buxton later pled no contest to the charge of malfeasance in office and

2

was sentenced to two years of supervised probation.

Overshadowing all of this is the fact that shortly before this incident, Chief Ipes was reported to the Louisiana State Police for malfeasance in office by Buxton's brother, Berlin Buxton, the former assistant chief of police, and Captain Robert Lane, the present assistant chief of police. Although it is unclear what part he played, Buxton was involved in this investigation.

Buxton filed a disputed claim for compensation seeking worker's compensation benefits based on Iowa's failure to pay him wage benefits or authorize medical treatment. He further stated that he had never refused to take a drug screen after the subject accident. Iowa answered arguing the affirmative defense of intoxication based on Buxton's failure to undergo the drug screen. Following a hearing on a rule, Iowa was ordered to authorize Buxton's evaluation by Dr. Clark Gunderson.

Following a hearing on the merits, the workers' compensation judge rendered a judgment finding that Buxton refused to undergo the drug screen and that Iowa was entitled to the presumption of intoxication as provided by La.R.S. 23:1081(7)(b). The workers' compensation judge further held that Buxton failed to rebut the presumption and dismissed his claims against Iowa with prejudice. This appeal by Buxton followed.

**ISSUES**

On appeal, Buxton argues that the workers' compensation judge erred in finding that he refused to undergo the drug screen and that he failed to rebut the presumption of intoxication or that the intoxication did not contribute to the work-

3

related accident. He further argues that the workers' compensation judge erred in finding that no work-related accident occurred and that he is not entitled to penalties and attorney's fees.

## INTOXICATION

In his first two assignments of error, Buxton argues that the workers' compensation judge erred in finding that he refused to undergo the drug screen and that he failed to present sufficient evidence to rebut the presumption of intoxication.

Louisiana Revised Statutes 23:1081(1)(b) provides that an employee may not recover compensation if his injury was caused by intoxication, unless the intoxication was related to the employer's interests or its provision of intoxicating substances. An employee is presumed to be intoxicated if there is evidence of use of a nonprescribed controlled dangerous substance. La.R.S. 23:1081(5).

An employer also has the right to administer drug testing or demand that the employee submit to a drug test immediately after the accident. La.R.S. 23:1081(7)(a). If the employee refuses to submit to the test, then the employer is entitled to the presumption that the work-related accident arose as a result of the employee's intoxication. La.R.S. 23:1081(7)(b) and (12). Once the presumption is in place, the burden shifts to the employee to prove by a preponderance of the evidence that the intoxication was not a contributing cause of the accident. La.R.S. 23:1081(12).

It is well settled that the manifest error—clearly wrong standard applies in an appellate court's review of the lower court's factual finding. *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733. However, a sufficiency

4

of the evidence issue raises a question of law, which the reviewing court resolves by determining if the lower court's ruling is legally correct. *Edwards v. Ford Motor Co.*, 06-101 (La.App. 3 Cir. 6/21/06), 934 So.2d 221, *writ denied*, 06-1847 (La. 10/27/06), 939 So.2d 1282; *Chelette v. Sec. Indus. Ins.*, 94-815 (La.App. 3 Cir. 12/7/94), 647 So.2d 469. Thus, once we have determined whether the workers' compensation judge was manifestly erroneous in his factual findings, we must determine whether he was legally correct in finding that Buxton failed to present sufficient evidence to rebut the presumption of intoxication.

### *Presumption of Intoxication*

In his oral reasons, the workers' compensation judge held that Iowa was entitled to the presumption of intoxication based on a finding that Buxton was using illegal drugs at the time of the accident. Although the workers' compensation judge addressed the issue of whether Buxton refused to undergo the drug screen, he never specifically held that he did so. However, under either scenario if proven, a presumption would arise in favor of Iowa. As the judgment states that Buxton refused to undergo the test subsequent to the accident and, as the final judgment governs the controversy, we will address whether the workers' compensation judge erred in finding that he refused to undergo the drug screen. *LaRocca v. Bailey*, 01-618 (La.App. 3 Cir. 11/7/01), 799 So.2d 1263.

After reviewing the record, we agree with the workers' compensation judge's observation that the testimony in this matter was sharply divided based on whose side each witness represented. All of the witnesses employed by Iowa testified strictly in support of Chief Ipes; whereas, Buxton's and his wife's testimony sharply

5

contradicted that presented by Iowa. As a result, the workers' compensation judge found that all of the witnesses' credibility suffered to some degree, a finding which is irrefutable.

The record presented two differing views of the evidence. Buxton testified that he never refused to undergo the drug screen although Chief Ipes ordered him to undergo such a test. He stated that he initially did not undergo the test because he and Captain Lane could find no place open at 6:30 a.m. to administer the test. Although he was later given $20 and told to have the test performed at the Pathology Laboratory in Lake Charles, Buxton testified that he did not undergo the test because he was feeling dizzy from the accident and because the place was packed. He stated that he and his wife returned to Iowa, where he was seen by Dr. Kang. Although Iowa was called to verify payment for his treatment, Buxton stated that Dr. Kang was not told to administer the drug screen, even though Chief Ipes knew that he had not yet undergone such a test.

Buxton stated that he was suspicious as to why Chief Ipes requested the test after speaking to Captain Lane, who wondered why Chief Ipes was insistent on Buxton undergoing the drug screen. Buxton testified that he told Captain Lane that he could pass the test, but admitted that he had taken his wife's pain medication for an abscessed tooth the night before. He stated that he also informed Chief Ipes of this fact. Buxton explained that he was wary of Chief Ipes' reasons because this incident occurred shortly after the chief was reported to the State Police for malfeasance of office, the investigation in which Buxton was involved. He further testified that other than a pre-employment drug test, he was never required to undergo a drug screen

6

following his previous work-related accidents, and he knew of three other officers who were not required to undergo testing following accidents. Buxton admitted that Chief Ipes told him to have a drug screen performed, but denied being told by either Chief Ipes or Captain Lane that he would be terminated from his job if he refused to undergo the test.

Margaret Buxton verified her husband's testimony that they were given $20 to have the drug screen performed in Lake Charles. She stated that they went to Lake Charles, but left because Buxton was hurting and the place was packed. She stated that she told her husband that if Chief Ipes wanted the drug test performed, he would ask the doctor to perform it. She said that they went back to Iowa, where Buxton was seen by Dr. Kang. She testified that Dr. Kang did not perform a drug test on Buxton.

Chief Ipes testified that he met with Buxton at 6:00 a.m. and told him that he was ordering a drug screen. He said that Buxton told him that he could not undergo such a test because he had taken his wife's prescription pain medication the night before. He testified that Buxton said that his back was hurting and that he was worried about exposure in the community and what it would do to his family and that he would rather walk away from his job than take the test. Chief Ipes stated that he told Buxton that he needed to take the test in order to save his job. He testified that Buxton returned to the police station later with his wife and reiterated that he was not going to take the drug screen. At that point, he stated that he told Buxton to talk to Captain Lane. Although Buxton took the $20 given to him by the dispatcher, Chief Ipes did not know where they went after they left the station. However, he stated that

7

they later returned, but said that Buxton had not undergone the test. At that point, he said that he told Buxton to go to the doctor.

Chief Ipes denied treating Buxton differently from any other officer employed by Iowa. He stated that it is the written policy of the Town of Iowa that every employee involved in an on-the-job injury undergo a drug screen. He further stated that pursuant to the Larson Act, he was not allowed to terminate Buxton for refusing to undergo the drug screen. Although he is allowed to suspend him without pay, he stated that he did not do so as Buxton was claiming an injury as a result of the incident with the motorcycle. Finally, Chief Ipes stated that he was exonerated in the State Police investigation of the charge of malfeasance in office.

Captain Lane testified that after he went on duty at 6:00 a.m., he heard that Chief Ipes was ordering Buxton to undergo a drug screen. He stated that he met with Buxton and discussed the situation. He said that Buxton told him that he would have a hard time taking the test because he had taken his wife's medication. Captain Lane testified that he told Buxton that if he refused to take the test he would probably be fired. After Buxton and his wife returned to the police station at approximately 9:00 a.m., Captain Lane testified that he was told by Chief Ipes that Buxton refused to undergo the drug screen because of the medication he had taken. He stated that he talked to them and told them that if Buxton refused a direct order, then he would probably be terminated. He said that Buxton complained that he was being singled out because other officers in the past had not been required to undergo drug screens. However, he stated that the drug screen policy was at the discretion of the chief of police.

Berlin Buxton, the former assistant chief of police and Buxton's brother, testified via deposition. He confirmed that it is the policy of the police department that any time an officer is involved in an accident in which they are at fault, a drug screen is performed. He stated that it is left to the chief of police's discretion whether an officer is screened.

Sandra Turley, the clerk for the Town of Iowa, testified that Iowa has written drug policies in place which apply to all town employees, including police officers.

Based on the preceding evidence, we find no error in the workers' compensation judge's finding that Buxton refused to submit to the drug screen. He was ordered to undergo the test by Chief Ipes and he failed to do so. Accordingly, it was reasonable for the workers' compensation judge to find that Iowa was entitled to rely on the presumption that the accident occurred as a result of Buxton's intoxication.

***Rebuttal of Presumption***

Based on the above finding, the burden shifted to Buxton to rebut the presumption of intoxication by a preponderance of the evidence. He testified that he started his shift at 6:00 p.m. and that he resumed his duties after the accident occurred and continued working until his shift ended at 6:00 a.m. the next morning. The police log introduced into evidence contains approximately eighty-four contacts between Buxton and the police dispatcher, with seventy-one occurring prior to the subject incident and the remainder occurring either as a result of the incident or subsequent to it.

9

Buxton testified that while executing the road block, he stopped his police unit in the correct position, with escape routes on either side of his unit, a maneuver he would not have been able to perform had he been intoxicated. He further testified that he drove his police unit after his shift ended while he and Captain Lane looked for a place to administer the drug screen. He stated that Captain Lane would have noticed if he was intoxicated and would not have allowed him to drive his police unit. Additionally, he testified that he drove it home, back to the police station, to Lake Charles to the Pathology Laboratory, and then back to Iowa. Buxton testified that at no time was he ever administered a field sobriety test. Buxton's wife verified that he continued driving his police unit after he completed his work shift.

Tony Ponthieux, an officer with Iowa, testified that he was on patrol on the night of the accident at issue. He testified that Buxton did not act intoxicated at the scene of the accident and later that morning at the police station, he was "[a]cting nonchalant, somewhat in a way of joking and – of the matter at hand." He stated that Buxton was asked for his driver's license by the Calcasieu Parish Sheriff's Deputy, who was investigating the matter, but he did not have it. From what he observed, Ponthieux testified that Buxton did not act as though he was intoxicated.

Captain Lane testified that he saw nothing peculiar in Buxton's manner which would lead him to believe that he was intoxicated. Even Chief Ipes testified that Buxton did not appear to be intoxicated when he spoke to him after 6:00 a.m. the next morning. He further admitted that Buxton continued driving his police unit after he saw him that morning.

10

Annette Jordan, an employee of the Iowa Police Department, testified that she was the dispatcher at the time of the accident. She testified that Buxton seemed fine when she talked to him over the radio and that he appeared normal when she saw him later that morning.

In finding that Buxton failed to present sufficient evidence to rebut the presumption, the workers' compensation judge stated:

> However, testimony suggested that after the incident, the behavior of Officer Buxton was, at the least, suspect. Granted, he was not seen falling down or stumbling; but that's not the criteria for being under the influence. Testimony was that, among other things, Officer Buxton couldn't find his driver's license to present to the investigating officer and his air of nonchalance seemed to be exaggerated and out of place.

> The evidence forces the conclusion that Officer Buxton fell short, far short, of showing that his intoxication or impairment was not a contributing cause of the accident.

> In short, the argument that Officer Buxton was in fact impaired at the time of the accident because of illegal drug use appears far more plausible than his denial. Let me emphasize that this decision takes into full account the fact that the Chief and his allies have utterly no use for Officer Buxton and haven't for a long time. I understand that. And the Chief's credibility is underwhelming, but Officer Buxton's is more so. The case is dismissed.

After reviewing the foregoing evidence, we find that Bruxton presented sufficient evidence to rebut the presumption of intoxication. Although there is evidence in the record that marijuana, drugs, and drug paraphernalia were found in his home approximately a month after the accident, that has no bearing on whether he was intoxicated at the time of the accident. All of the witnesses, even those hostile to Buxton, testified that he appeared normal after the accident. Furthermore, Officers Ponthieux and Jordan testified that there was nothing in his demeanor right after the accident which would lead them to conclude that he was intoxicated. This is borne

11

out by the fact that Chief Ipes allowed Buxton to continue driving his police unit after his shift ended and after he refused to undergo the drug screen. Accordingly, we find that the workers' compensation judge was incorrect in finding that Buxton failed to rebut the presumption of intoxication.

## WORK-RELATED ACCIDENT

In his final assignments of error, Buxton argues that the workers' compensation judge erred in finding that no work-related accident occurred, in denying his disability and entitlement to benefits, and in denying his claim for penalties and attorney's fees. He further argues that he is entitled to additional attorney's fees for work performed pursuant to this appeal.

The hearing officer did not address any of the issues stated above based on his finding that Buxton failed to rebut the presumption of intoxication. However, as we find the record before us is insufficient for us to make a determination on these issues, we remand the matter to the workers' compensation judge for further proceedings. We award Buxton $3000 in attorney's fees for work performed on appeal.

## CONCLUSION

Based on the foregoing, the judgment of the workers' compensation judge is reversed and judgment is rendered finding that Buxton rebutted the presumption of intoxication. The matter is remanded to the Office of Workers' Compensation for further proceedings. We further award Buxton $3000 in attorney's fees for work performed on appeal. The costs of this appeal are assessed to the defendant-appellee, Iowa Police Department.

**REVERSED, RENDERED, AND REMANDED.**

12