JiPREW, J.
La. Const. Art. V, § 5(D) provides that, when a law has been declared unconstitutional, the case is appealable to the supreme court. Since the trial court had declared La. R.S. 3:4278.2 unconstitutional as applied to plaintiffs, this court transferred this appeal to the supreme court. After concluding that a non-constitutional resolution was available, the Louisiana Supreme Court determined that the trial court should have declined to rule on the constitutionality of La. R.S. 3:4278.2. The supreme court vacated the trial court’s declaration of unconstitutionality and remanded the matter to this court for con *659 sideration of the other assignments of error. The judgment is vacated and the matter remanded to the trial court with instructions.

FACTS AND PROCEDURAL HISTORY

Sidney A. Brinker, Eugenia Yocum Brinker, Marion H. White, Shirley Brid-well White, Ray L. Wilkins and Patricia Strahan Wilkins (plaintiffs) sued Junction City Wood Co., Inc. to enjoin timber cutting on property in which they owned an undivided interest. Plaintiffs also sought a declaratory judgment that La. R.S. 3:4278.2 was unconstitutional. This protracted litigation commenced on December 1, 1994. In its answer and reconventional demand, defendant demanded damages, attorney’s fees and costs. In an amended petition, the plaintiffs, in the alternative, requested that the timber sale be rescinded due to lesion beyond moiety.
After granting a temporary restraining order and a preliminary injunction, the trial court on August 5, 1995, granted a permanent injunction against timber cutting and declared La. R.S. 3:4278.2 unconstitutional as applied to plaintiffs. The judgment was signed on November 6, 1995. The judgment was filed and notice of the judgment was sent November 13, 1995. On January 5, 1996, the trial court granted the motion for appeal of Junction Wood Co., Inc. The appeal was | ¡dodged at the Second Circuit Court of Appeal on April 24, 1996. In a per curiam opinion this court transferred this matter to the supreme court on November 7, 1996.
On January 20, 1999, the Louisiana Supreme Court remanded the matter to this court. In Brinker v. Junction City Wood Co., Inc., 96-2896 (La.1/20/99), 728 So.2d 1252, the supreme court ruled that the trial court prematurely found La. R.S. 3:4278.2 unconstitutional. The supreme court cited the long standing judicial principle that courts do not consider a constitutional challenge unless it is necessary to resolve the dispute and observed that the courts should avoid constitutional rulings when a case can be decided on non-constitutional issues. The trial court had found that the plaintiffs were not offered the same price as the owners who had sold their timber to defendant and that no proof was given that the consenting owners had agreed to indemnify the plaintiffs. Under La. R.S. 3:4278.2, the defendant had no right to proceed with timber cutting and the matter could be resolved on non-constitutional issues. The supreme court vacated the trial court’s declaration that the statute was unconstitutional and remanded the matter for consideration of the other assignments of error.

LAW

La. R.S. 3:4278.2 states:
A. A co-owner or co-heir of land may execute an act of timber sale whereby he sells his undivided interest in the timber, and any condition imposing a time period within which to remove the timber shall commence from the date of its execution.
B. A buyer who purchases the timber from a co-owner or co-heir of land may not remove the timber without the consent of the co-owners or co-heirs representing at least eighty percent of the ownership interest in the land, provided that he has made reasonable effort to contact the co-owners or co-heirs who have not consented and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with the other co-owners or co-heirs.
|3C. A co-owner or co-heir of the land who does not consent to the exercise of such rights has no liability for the cost of timber operations resulting from the sale of the timber, and shall receive from the buyer the same price which the buyer paid to the other co-owners or coheirs. The consenting co-owners or coheirs shall agree to indemnify and hold harmless the nonconsenting co-owners or co-heirs for any damage or injury *660 claims which may result from such operations.
D. If the nonconsenting co-owner or co-heir fails or refuses to claim his portion of the sale price of the timber, the buyer shall be obligated to hold such funds in escrow, for and on behalf of such nonconsenting co-owner or co-heir and any interest or other income earned by such funds in escrow shall inure to the benefit of the co-owner or co-heir for whom they are held.
E. Failure to comply with the provisions of this Section shall constitute pri-ma facie evidence of the intent to commit theft of the timber by such buyer.

TESTIMONY AND REASONS FOR JUDGMENT

In addition to stipulating to the admission of all the documents filed into evidence at the hearing on the preliminary injunction, the parties stipulated at the hearing on the permanent injunction that Junction City Wood Co, Inc. owned 95% of the timber standing on the property through its timber deed and that the plaintiffs owned the other 5% of both the timber and the tract on which it grew. The parties also placed a copy of La. R.S. 3:4278.2 into the record.
Ray L. Wilkins testified that he, White and Brinker, along with their wives, purchased the 5% undivided interest in the 210-acre Alderson tract. All three couples received certified letters offering to buy their interest in the timber for $385.00. The parties stipulated that the other 95% of the owners were offered $115.28 dollars per acre for their timber, while the plaintiffs were offered $110.00 per acre. The plaintiffs rejected the offer. The parties stipulated that, had they testified, White and Brinker would have given the same testimony as Wilkins.
At the conclusion of the hearing, the trial court noted that on August 19, 1994, via certified mail return receipt requested, defendant mailed letters to Rplaintiffs offering to purchase plaintiffs’ timber and advising that defendant intended to remove the timber and to escrow the funds due plaintiffs if plaintiffs rejected defendant’s offer. Defendant commenced harvesting timber on September 23,1994.
Two experts in evaluating timber values, one retained by plaintiffs and one retained by defendant, estimated the market value of the timber at $277.12 per acre and $307.94 per acre. Both estimated values for the timber obviously exceeded the $110 per acre which the defendant offered to plaintiffs. The trial court observed that the price offered to plaintiffs had no relation to the fair market price and was less than half the value of the market price set by the experts. Under the statute, the non-consenting timber owners had to be offered the same amount as consenting owners were paid. The trial court contrasted the Mineral Code which provides that non-consenting owners receive their proportionate market value share of the minerals less their proportionate share of production costs. La. R.S. 31:164 et seq. While non-consenting mineral owners may invoke a hearing before the conservation commission, non-consenting timber owner’s remedy is to file suit.
While noting the differences in the language of 3:4278.2(B), “substantially the same,” and 3:4278.2(C), “same price,” the trial court found that the plaintiffs were not offered the same price as the consenting owners. The trial court also decided the defendant began cutting timber on the Alderson tract without offering proof that the consenting owners had agreed to indemnify the plaintiffs. Based upon the foregoing, the trial court concluded that the defendant had not met the requirements of La. R.S. 3:4278.2(C). Citing the jurisprudential rule that cutting timber is in and of itself irreparable injury and 3:34278.2(E) which provided that [¿failure to comply with the statute is prima facie evidence of intent to commit timber theft, the trial court granted the permanent injunction.

*661
DISCUSSION

Aside from its assertions that La. R.S. 3:4278.2 was constitutional, the defendant wood company urged that the trial court erred in issuing the permanent injunction and in finding defendant did not comply with the statute. The defendant argued the statute did not require a written indemnity agreement in favor of the non-consenting co-owners and contended there was no showing of irreparable harm to support injunctive relief.
The defendant’s timber purchase from 95% of the undivided owners of the Alderson tract and their notice via certified mail to the plaintiffs complied with La. R.S. 3:4278.2(B) in part. Defendant vigorously argued that its offer of $110 per acre to plaintiffs satisfied the requirement that it offer to contract with the non-consenting owners on “substantially the same basis” that it contracted with the other co-owners. La. R.S. 3:4278.2(B). The stipulation of the parties that the defendant offered plaintiffs $110.00 per acre for their timber while offering $115.28 per acre to the consenting co-owners established that their offer to plaintiffs was not on “substantially the same basis.” Further, that offer did not comply with 3:4278.2(0), which directs that non-consenting owners “shall receive from the buyer the same price which the buyer paid to the other co-owners.” Our emphasis. The trial court correctly found that the defendant did not comply with the statute in regard to the price.
La. R.S. 3:4278.2(0) mandates that the consenting co-owners shall agree to indemnify and hold harmless the non-consenting co-owners for any damage or injury claim which may result from the timber operation. Defendant argued that there is no legal requirement that the indemnity agreement be in writing. In | ^written reasons for granting the preliminary injunction, the trial court found that 3:4278.2(C) required a separate written agreement and held that the consenting owners’ obligation to hold the non-consenting owners harmless was not simply implied by law. When ruling on the permanent injunction, the trial court specifically did not find that an indemnity agreement had to be in writing. The permanent injunction was based in part upon the trial court’s finding that there was no proof of any indemnity agreement. This record is silent as to any knowledge on the part of the consenting co-owners (1) that other co-owners did not consent to sell to defendant, (2) that they had to agree to hold the plaintiffs harmless and to indemnify them for any damage or injury resulting from the operations and (3) that the consenting owners had, in fact, made such an agreement.
Obligations may arise from contracts and other declarations of will or may arise directly from the law. Examples of obligations that arise by operation of law include those found in La. C.C. arts. 667 (a proprietor may not use his estate in a way that damages or deprives his neighbor of enjoyment of his property) and 1100 ( person who takes unauthorized possession of a vacant succession for his own use is liable to pay the debts of the estate). In contrast, 3:4278.2(C) requires that an agreement be made. The record is silent as to any such indemnification agreement, written or otherwise made. Therefore, it is not necessary to resolve whether such an indemnification must be written.
However, the supreme court instructed this court to address the assignments of error raised on appeal. If the law requires that a contract be written, it may not be proved by testimony or presumption. La. C.C. art. 1832. Since standing timber is an immovable, a contract transferring ownership of timber must be a written contract. La. C.C. art. 1839. An indemnification agreement is not the same obligation as a contract transferring the ownership of standing timber. Under La. |7C.C. art. 801, there is no requirement that an agreement must be written among co-owners as to the use and management of a thing held in indivisión. We conclude a written indemnification *662 agreement is not mandated by La. R.S. 3:4278.2.
Defendant’s other complaint on appeal is that the permanent injunction was granted in the absence of a showing of irreparable injury. Injunctions issue in eases where irreparable injury may result to applicant or in other cases where specifically provided by law. La. C.C.P. art 3601. In addition to finding irreparable injury based on jurisprudence, the trial court based the injunction on defendant’s failure to comply with 3:4278.2(C) and on the statutory provision, 3:4278.2(E), that failure to comply is prima facie evidence of the buyer’s intent to commit timber theft. In contrast to statutes which specifically authorize in-junctive relief (See La. R.S. 9:3555, injunctions against fraudulent acts by extenders of credit; La. R.S. 40:6, injunctions against violations of the health code; La. R.S. 51:1407, injunctions against unlawful unfair trade practices), La. R.S. 3:4278.2 does not direct that an injunction issue when a timber purchaser has not complied with the statute. Therefore, a showing of irreparable injury is necessary for this permanent injunction.
Contending that cutting timber, in and of itself, is irreparable harm, plaintiffs cited De La Croix v. Villere, 11 La. Ann. 39 (1856), which set out the English and American rules that destruction of forest and other trees was an irreparable injury for which the courts would restrain parties. The court noted that money damages would not adequately compensate a man who planned to use the trees for timber to repair his buildings in years to come and to supply his annual needs for wood or who prized the trees for their ornamental and sentimental values.
While in certain instances the felling of a tree or forest would constitute irreparable injury, the only evidence in this record concerning plaintiffs’ plans for |stheir 5% undivided interest in the property is Wilkins’ testimony that he and the other plaintiffs were “hoping they would come out on the thing one of these days,” an indication their concern for the property was pecuniary. Wilkins acknowledged he had not seen the property prior to the purchase and may have driven by it on the road after plaintiffs acquired their undivided interest. Wilkins also testified that Brinker had looked at the tract more closely and concluded defendant’s offer was low. Wilkins’s view was that the defendant’s offer was very low if there was any timber at all on the property. There is no evidence that the plaintiffs had any special regard for the property as a source of wood for repairs or had any value for the property as ornamental or sentimental. As to the timber values, both the plaintiffs and the defendant’s timber experts gave similar estimates for the timber which exceeded by more than half the amount offered by defendant. Under the facts and circumstances of this case, plaintiffs could have been adequately compensated in money for damages for defendant’s failure to fully comply with La. R.S. 3:4278.2. Therefore, the permanent injunction was improperly granted and is vacated.
In their amended petition, plaintiffs have also sought to rescind the sale of the timber to defendant based upon their assertion that the prices offered are lesion-ary. La. C.C. arts. 2589, et seq. Since the trial court enjoined the defendant’s timber operations, the trial court did not address their assertion of lesion beyond moiety. However, based upon the testimony of both the defendant’s and the plaintiffs’ experts and the stipulations of the parties, the price offered was lesion-ary, since it was less than one half the fair market value of the timber according to both parties’ experts. Since the record reveals that the transaction was lesionary, the matter is remanded to the trial court which is directed to fashion a remedy based upon La. C.C. art. 2589, et seq, and particularly La. C.C. art. 2591.

DECREE

The trial court correctly concluded that defendant did not comply with the terms *663 of La. R.S. 3:4278.2. Since the statute does not specifically provide for injunctive relief, a showing of irreparable injury was required for issuance of an injunction. This record does not contain proof that defendant’s violation of 3:4278.2 constituted irreparable injury incapable of calculation in money damages. Therefore, we find that the trial court incorrectly issued the permanent injunction and the trial court’s judgment issuing the permanent injunction is vacated.
Based upon testimony, stipulations and proof in this record, the defendant’s timber transaction with plaintiffs predicated upon La. R.S. 3:4278.2 is lesionary. The matter is remanded to the trial court with instructions to fashion a remedy for the lesionary transaction based upon La. C.C. art. 2589, et seq, and particularly La. C.C. art. 2591. Costs are assessed to defendant.
TRIAL COURT JUDGMENT VACATED AND THE MATTER REMANDED WITH INSTRUCTIONS.
Before NORRIS, BROWN, WILLIAMS, KOSTELKA and DREW, JJ.