745 So.2d 593 (1999)
Harry PRICE
v.
U-HAUL COMPANY OF LOUISIANA, Self Storage Association, Chef Menteur Self-Service Storage, U-haul International, Inc., Richard Ieyoub and State of Louisiana.
No. 98-CA-1959.
Supreme Court of Louisiana.
September 8, 1999.
Rehearing Denied October 8, 1999.
Henry Minor Pipes, III, Phillip A. Wittmann, Melinda Morris Tucker, New Orleans, Richard P. Ieyoub, Attorney General, for Applicant.
Allain Freret Hardin, New Orleans, Chester C. Stetfelt, Jr., Metairie, for Respondent.
LEMMON, Justice.[*]
In this action, plaintiff seeks, among other relief, a declaration of the unconstitutionality of La.Rev.Stat. 9:4756-4760, entitled the "Self-Service Storage Facility Act." The Act grants to the owner-lessor of a self-service storage facility a privilege on the movable property of the lessee stored in the facility, securing the debt due the owner-lessor for rent, and further authorizes the owner-lessor, in the event of default by the lessee, as an alternative to judicial enforcement of the lease agreement, to cancel the lease and enforce the privilege by a procedure for non-judicial sale detailed in the statute. Among its provisions are notice to the lessee, by delivery or certified mail, of the lessor's intent to enforce unless paid within ten days; advertising a description of the movables to be sold and the date (not less than ten days from the advertisement), time and place of the intended sale to the highest bidder (with any surplus held for the lessee); and the right of the lessee, up until the moment of sale, to avoid sale by paying the debt and reasonable expenses.
*594 Defendants have appealed from a judgment declaring the Act unconstitutional as a violation of due process guarantees. Defendants' principal argument, based on Flagg Bros. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), is that their conduct was purely private action authorized by statute and did not constitute state action necessary to implicate due process guarantees.

Facts
In 1993, plaintiff entered into a written lease agreement with Chef Menteur Self-Service Storage (CMSS) in which plaintiff leased a mini-storage unit in CMSS's New Orleans facility. Six months later, CMSS sold the mini-storage units to U-Haul of Louisiana, and U-Haul assumed all the outstanding leases of the units.
Thereafter, plaintiff became delinquent in his rent payments. Invoking the Self-Service Storage Facility Act and the lease, U-Haul followed the procedures required in the Act and on April 4, 1994 sold by private auction the property contained in plaintiff's unit.
On February 18, 1997, plaintiff brought this class action on behalf of himself and all others similarly situated. On plaintiffs pre-trial motion, the trial judge rendered judgment declaring that La.Rev.Stat. 9:4756-4760 violated the Louisiana Constitution and observing that "Louisiana still does not allow self-help." This direct appeal followed. La. Const. art. V, § 5(D).

Due Process Challenges
La. Const. art. I, § 2 provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." The Fourteenth Amendment to the United States Constitution provides "nor shall any State deprive any person of life, Liberty, or property, without due process of law."
An essential requirement in any due process challenge is that the claimant must show that some property or liberty interest has been adversely affected by state action. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980); Lee Hargrave, The Louisiana State Constitution: A Reference Guide 23 (1991)(state due process guarantee protects against governmental, as opposed to private, action). Here, it is undisputed plaintiff was deprived of rights that are protected by the due process guarantees of the federal and state constitutions against state action. The disputed issue, decisive of the constitutional challenge, is whether defendants' invoking the Act's provisions to conduct a private seizure and sale of plaintiffs property constituted state action. Defendants contend that their action involved purely private seizure and private sale of property, authorized by statute and by contract between the parties, and therefore was not state action that would implicate constitutional due process principles.

State Action Decisions under the United States Constitution
The federal and state due process guarantees are stated in virtually identical language. In determining the existence of state action, Louisiana courts have routinely turned to federal cases.
Historically, the federal jurisprudence generally subdivided the determination of state action into two basic categories of analysis: (1) public function concept and (2) nexus concept. Under the public function concept, state action was present when a private party engaged in certain governmental functions which were "state-like" enough to implicate the constitutional guarantees. Under the nexus concept, the state action determination turned on the relationship between the state and the activities of the alleged private wrongdoer. A subcategory of the nexus test was the state encouragement theory, under which the private party was said to have been encouraged by the state.[1] John E. Nowak, *595 et al., Constitutional Law 502-513 (2d. ed.1983). The nexus concept was a fluid one for which the courts declined to articulate a formal test, often stating that "[o]nly by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).
After the Burton case, the Supreme Court in a series of cases addressed the issue of procedural due process in situations in which a creditor sought to deprive a debtor of a significant property interest. However, in the first three cases discussed below, state action was not at issue because a state official participated in the seizure of the property.
In Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Court struck down a Wisconsin statute that authorized prejudgment garnishment of wages as violative of due process rights generally to notice and hearing prior to seizure of property. The Court noted that prejudgment garnishment of wages may impose a tremendous hardship on wage earners with families to support.
In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court declared unconstitutional Florida and Pennsylvania statutes that permitted creditors under conditional sales contracts to repossess property, without notice to the debtor or a hearing, by obtaining a prejudgment writ of replevin from the clerk based on conclusory claims of ownership. The decision was written narrowly, noting that a state statute might, under appropriate circumstances, authorize seizure of property before final judgment.
In Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court upheld a Louisiana statute authorizing prejudgment seizure of property by mortgage or lien holders, without notice to the debtor or hearing, under limited circumstances when it was necessary to forestall wasting or alienation of the encumbered property. Because the statute required the creditor to present to the judge a verified affidavit establishing the special circumstances before issuance of the writ, the Court noted that the debtor "was not at the unsupervised mercy of the creditor and court functionaries." Id. at 616, 94 S.Ct. 1895. The Court also referred to the raging debate in conferences and commissions over summary creditor remedies.
This raging debate gave rise to a conflict in the federal circuits. See, e.g., Adams v. Southern California First Nat'l Bank, 492 F.2d 324 (9th Cir.1973),[2] and Brooks v. Flagg Bros., Inc., 553 F.2d 764, 771 (2d Cir.1977). The Supreme Court granted certiorari in the latter case to resolve this conflict.
In Flagg Bros. v. Brooks., 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), which is the primary basis for defendants' argument that state action is lacking in the present case, the city marshal evicted Brooks and her family from their New York apartment, arranging for their possessions to be stored in a private warehouse operated by Flagg Brothers. With little practical choice, Brooks agreed to the *596 storage arrangement. A dispute later arose over the storage charges. Utilizing the private repossession and sale procedure authorized under the New York's counterpart to U.C.C. § 7-210 (providing for the private enforcement of a warehouseman's lien for unpaid storage charges), Flagg Brothers demanded in writing that Brooks' account be brought up to date within ten days of the notice, in default of which the property would be sold. Brooks responded by bringing a class action challenging, on federal constitutional grounds, the threatened self-help repossession procedures.
The district court, concluding that Brooks failed to show sufficient state involvement in the warehouseman's lien enforcement process, dismissed her complaint based on the lack of state action. 404 F.Supp. 1059 (S.D.N.Y.1975). The court of appeals reversed, reasoning that the New York statute "delegated to the warehouseman a portion of its sovereign monopoly power over binding conflict resolution... [and] also let him, by selling stored goods, execute a lien and thus perform a function which has traditionally been that of the sheriff." Brooks v. Flagg Bros., Inc., 553 F.2d 764, 771 (2d Cir.1977). In so holding, the court of appeals summarized the factors on which appellate courts have focused in varying degrees to analyze the state action issue in the creditor-debtor context, as follows:
[W]hether the state has delegated one of its unique powers to a private person; whether the common law rights of the creditor were expanded or merely codified; whether the creditor's power amounts to a roving commission or exists only over particular chattels that are closely connected with the debt; whether the creditor's remedy was authorized by contract as well as statute; whether the creditor's resort to the remedy was mandatory or optional; whether the state extensively regulates the creditor's industry; and even whether title rests in the debtor or creditor....
553 F.2d at 770. Applying these factors to Brooks' situation, the court of appeals concluded that state action was involved, observing that "the combination of New York's statutory delegation of distinctly governmental power to the warehouseman and its corresponding expansion of his common law remedies suffices to thrust the state's involvement in the challenged activity over the threshold of state action." Id. at 771. The court found significant both the creditor's unilateral right to resolve the dispute over the storage charges without any judicial oversight and the creditor's right to sell the stored goods in order to execute the lien, a function traditionally reserved to the sheriff.
On certiorari, the Supreme Court framed the issue as "whether Flagg Brothers' action may fairly be attributed to the State of New York" in the absence of any overt official state involvement. 436 U.S. at 157, 98 S.Ct. 1729. In its state action analysis, the Court addressed both the public function doctrine and the state encouragement theory under the nexus concept.
Noting the intermediate court's reference to dispute resolution and execution of a lien as powers traditionally reserved to the state, the Court commented that very few functions have been "exclusively" reserved to the state.[3] The Court then adopted a narrowly tailored public function doctrine confined to those few functions, which did not include private dispute resolution. The Court noted that the proposed sale was not the exclusive means of resolving this purely private dispute in that the parties could have privately contracted to waive the right of private sale or could have invoked the state law remedy of replevin.[4]
*597 Acknowledging that it was not removing the field of creditor-debtor transactions from constitutional constraints, the Court emphasized that this particular statute merely codified a procedure that the parties would traditionally have done by private arrangements. The Court stated that the "New York's statute has done nothing more than authorize (and indeed limit)without participation by any public officialwhat Flagg Brothers would tend to do, even in the absence of such authorization, i.e., dispose of respondents' property in order to free up its valuable storage space." Id. at 163 n. 12, 98 S.Ct. 1729. However, the Court further observed that a review of the "historical antecedents" of the creditor's remedy was unwarranted since "[t]o rely upon the historical antecedents of a particular practice would result in the constitutional condemnation in one State of a remedy found perfectly permissible in another." Id. at 163, 98 S.Ct. 1729.
As to the state encouragement theory, the Court cited its jurisprudence that state action exists when a state, by its law, compels or orders the private action.[5] Noting that the New York statute merely permits, but does not compel, the private sale and characterizing the State's conduct as a refusal to interfere with the private sale (i.e., an inaction), the Court concluded it was "immaterial" that New York had embodied in statutory form its decision not to act and analogized this inaction to imposing a statue of limitations "whereby the State declines to provide a remedy for private deprivations of property after the passage of a given period of time." Id. at 166, 98 S.Ct. 1729.
Justice Marshall's dissent focused on the five-person majority's "cavalier" treatment of historical factors in the state action inquiry, asserting that while "the test adopted by the Court itself requires us to decide what functions have been `traditionally exclusively reserved to the State,'" this test cannot be applied in a "historical vacuum." Id. at 167, 98 S.Ct. 1729. The dissent stated, "By ignoring this history, the Court approaches the question before us as if it can be decided without reference to the role that the State has always played in lien execution by forced sale." Id. at 168, 98 S.Ct. 1729. Likewise, Justice Stevens in his dissent noted that "some reference to history and well-settled practice is necessary to determine whether a particular action is a `traditional state function.'"[6]Id. at 172 n. 7, 98 S.Ct. 1729.
After Flagg Brothers, the debate over extending creditors' remedies continued, and scholarly commentaries noted the incongruity of the Flagg Brothers decision. See Christine A. Bartlett, Note, The Constitutionality of New York's Garageman's Lien: A "Flexible" State Action Concept Under the State Due Process Clause, 43 Alb. L.Rev. 121, 131-32 n. 64 (1978)("The lack of state control over the due process procedures of notice and hearing, which *598 rendered the statutes in Fuentes and North Georgia unconstitutional, is the very factor which can preclude a finding of state action in the first place, since there would be no `significant' state involvement."); Bruce Schewe, Comment, Civilian Thoughts on U.C.C. Section 9-503, Self-Help Repossession: Reasoning in a Historical Vacuum, 42 La. L.Rev. 239, 255 n. 110 (1981)(noting that while the majority in Flagg Brothers may have viewed the prior cases as decided incorrectly and were perhaps "[u]nwilling to overrule North Georgia, Fuentes, and Sniadach, the Flagg Brothers Court achieves the same result in refusing to find state action"); Laurence H. Tribe, American Constitutional Law § 18-6 (2d ed. 1988)("Since what was wrong in prior due process cases was that the state had not reserved enough control over the use of coercive force, it would be perverse for the Court to conclude that the scheme in Flagg Brothers was less constitutionally infirm because the state withdrew even its clerical rubber stamp and freed creditors to dispose of debtors' property without any mediation or intervention by public authorities.").
Nevertheless, the holding in Flagg Brothers as to state action has sounded the death knell in several jurisdictions for federal constitutional due process challenges to similar self-help repossession provisions, and we conclude the Act does not violate the federal constitution. Due process challenges under state constitutions, however, have not been foreclosed. Indeed, state judges have been encouraged not to apply Supreme Court decisions mechanically to state law issues, even when the state and federal constitutions are similarly or identically worded, but rather to use such decisions as guideposts and to use them "only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees." William J. Brennan, Jr., State Constitutions and Protections of Individual Rights, 90 Harv. L.Rev. 489, 502 (1977). See also State v. Hernandez, 410 So.2d 1381, 1385 (La.1982)(noting that this court "cannot and should not allow [the United States Supreme Court's] decisions to replace our independent judgment in construing the constitution adopted by the people of Louisiana").

State Action Decisions under State Constitutions in Other Jurisdictions
The same New York statutory scheme upheld in Flagg Brothers was invalidated shortly thereafter under the New York Constitution. In Svendsen v. Smith's Moving & Trucking Co., 76 A.D.2d 504, 431 N.Y.S.2d 94 (1980), the court, noting that Flagg Brothers was not dispositive of a state constitutional challenge, followed the earlier decision of New York's highest court in Sharrock v. Dell Buick-Cadillac, Inc., 45 N.Y.2d 152, 408 N.Y.S.2d 39, 379 N.E.2d 1169 (1978) on the state action issue in debtor-creditor relationships.
In Sharrock, which involved a post-Flagg Brothers challenge under the state constitution to a garagemen's lien similar to the warehousemen's lien in Flagg Brothers, the court fashioned a flexible concept for analyzing state action. Although noting that the New York Constitution contains no express state action requirement, the court acknowledged the necessity of state involvement for a successful constitutional challenge. Then the court, essentially using the same two state action theories rejected in Flagg Brothers, adopted a more flexible standard for determining whether there was sufficient state involvement to implicate due process guarantees. Bartlett, supra.
First, the court determined that the state not only authorized the garageman's right to possession of the property, a right afforded by the common law, but also authorized enforcement of the lien by ex parte sale, thereby expanding the common law rights and "entwin[ing] itself into the debtor-creditor relationship arising out of otherwise regular consumer transactions." *599 408 N.Y.S.2d 39, 379 N.E.2d at 1175. Additionally, the court determined that the state's delegation of the power "to resolve unilaterally an otherwise judicially cognizable controversy" vested the garageman with a traditional sovereign function. Id.
California followed New York in applying an independent state constitutional analysis for determining the existence of state action. Citing Sharrock, the court in Martin v. Heady, 103 Cal.App.3d 580, 163 Cal.Rptr. 117 (1980), invalidated an aircraft lien law that granted an aircraft keeper a lien for the repair and storage charges against the aircraft serviced. The court determined there was state action because the private lien sales statute constituted a delegation by the state of its traditional sovereign power of nonconsensual enforcement of possessory liens by private sale. Noting that a possessory lien-holder had no power under the common law to enforce the lien,[7] the court rejected the argument that the statute was simply a codification of the common law and determined that the statute authorized state, rather than private, action.

State Action Determination under the Louisiana Constitution
We proceed to determine, under the Louisiana Constitution, whether a creditor's utilization of the Self-Service Storage Facility Act for a private seizure and sale of the debtor's property, without a hearing or judicial supervision, constitutes state action that implicates due process guarantees.
Plaintiffs invitation to follow New York and California in rejecting, under the state constitution, a creditor's use of state-authorized private seizure and sale of the debtor's property is attractive, particularly in view of Louisiana's history under civilian principles of the abhorrence of self-help by creditors.[8] One of the primary factors in determining the existence of state action, when the asserted involvement is a legislative act, is whether the act codified or extended previous rights. This inquiry necessarily involves a review of historical antecedents, including Louisiana's traditional civilian principles. Nevertheless, some twenty years have passed since the Flagg Brothers decision and the New York and California state constitution decisions were rendered. We cannot ignore historical events in Louisiana during those twenty years, in which the trend of the Legislature (which sets public policy in the state) has been to follow national commercial practices and to permit private enforcement of possessory liens in several specific situations.
Around the time of the Flagg Brothers decision in 1978, Louisiana steadfastly resisted self-help in creditor-debtor relationships. Louisiana had also resisted wholesale adoption of the Uniform Commercial Code (U.C.C.), which was in use in most other jurisdictions.
The Legislature, apparently in order to bring Louisiana in line with national use of uniform commercial practices, began adopting selected sections of the Uniform Commercial Code, although modified in several respects. In 1988, the Legislature adopted Section 9 of the U.C.C., pertaining to secured transactions.[9] This gradual *600 yielding to the national trend included adoption of several procedures for private enforcement of possessory liens.[10]
In addition to the U.C.C. provisions, the Legislature has adopted special provisions for warehouseman's liens (similar to those in Flagg Brothers). See La.Rev.Stat. 10:7-210. In 1981, the Legislature added possessory lien protection for owners of self-service storage facilities and provided for private enforcement of these possessory liens.
From this review, we conclude that the Self-Service Storage Act was not an extension of previously existing rights of possessory lienholders that might constitute state action. Rather, the Act was the removal of state involvement through judicial oversight. A legislative decision to remove state involvement from enforcement of possessory liens that were legislatively created at the same time does not necessarily constitute state action that implicates procedural due process guarantees.
In summary, an owner-lessor who proceeds under the private enforcement provisions of the Self-Service Storage Facility Act is a private actor who is not acting under color of state law. While the owner-lessor is acting under a government rule, it is not a rule that fostered discrimination, as in Reitman, or a rule that infringed upon freedom of speech, as in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); it is simply a rule that removed state involvement from certain commercial transactions. Moreover, the state neither encouraged nor benefitted from the private action authorized in the Act. The owner-lessor is simply engaging in a private procedure that is no longer prohibited, but rather is authorized by statute while not being compelled by statute.[11]
Moreover, while the enforcement of possessory liens traditionally has been performed by the sheriff in Louisiana, the enforcement is not exclusively reserved to the sheriff, especially since the enactment of U.C.C. provisions and more especially when enforcement procedures are considered on a nationwide basis because of Louisiana's subscribing to nationally uniform commercial laws.
Significantly, the Act requires notice by delivery or certified mail to the defaulting debtor that the owner-lessor has taken possession of the property subject to the lien created by the Act. The debtor is then given a reasonable period after notice to seek judicial protection if the debt is not in default or if there are other defects in the owner-lessor's claim. Moreover, the Act presents no obstacle to the debtor's recovery of damages caused by wrongful seizure and sale. Generally, the validity and default status of the debt are not disputed, and the value of the lien usually is insufficient to justify expensive litigation.[12]
We therefore conclude that the Act, with its fair notice requirement and other safeguards, presents no fundamental unfairness in the creditor-debtor relationship to which the possessory lien applies. This does not necessarily mean that private self-help can be utilized in every creditor-debtor relationship, even if authorized by statute. Such matters are to be decided on a case-by-case basis. However, the Act *601 presently under consideration, particularly in the context of the facts of this particular case, does not warrant judicial intervention.
Finally, while this court has on occasion interpreted other provisions of the Louisiana Constitution to provide greater protection for citizens of this state than is provided under the United States Constitution, this court has never interpreted the Due Process Clause of the Louisiana Constitution beyond the federal constitutional decisions of the United States Supreme Court. Fields v. State of Louisiana Through Dep't of Public Safety and Corrections, 98-0611 p. 6 (La.7/8/98), 714 So.2d 1244, 1250. If this court were to follow the views expressed by the New York and California courts shortly after the Flagg Brothers decision, such a ruling by this court, applicable only in this state, would adversely affect the uniformity of commercial laws pertaining to possessory liens as they exist in most other jurisdictions. See Sharrock v. Dell Buick-Cadillac, Inc., 45 N.Y.2d 152, 408 N.Y.S.2d 39, 379 N.E.2d 1169, 1183 (1978)(Jasen, J., dissenting).
Accordingly, the judgment of the district court declaring La.Rev.Stat. 9:4756-4760 unconstitutional is reversed.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part II, § 3.
[1] In Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), the Court ruled that a state constitutional amendment, recognizing a private property owner's right to discriminate in disposing of his property, violated the federal Constitution. The Court reasoned that the amendment improperly "encouraged" private discrimination and that the passage of the amendment thus sufficed to constitute state action.
[2] The Adams case involved a creditor's use of self-help repossession of the debtor's property pursuant to a statute and a contract. The debtor, relying on Reitman, supra, argued that the statute encouraged the creditor to include the right of private repossession in the contract, thus constituting state action. The Adams court distinguished Reitman in that Reitman involved a reversal of prior state policy prohibiting racial discrimination, whereas the statute in Adams was viewed as merely codifying an existing remedy of self-help repossession. The Adams court thus found that there was a greater degree of state involvement in Reitman.
[3] The Court listed two examples from previous cases of functions reserved exclusively to the states: the conducting of elections and the running of an entire town.
[4] The Court stated, "This system of rights and remedies, recognizing the traditional place of private arrangements in ordering relationships in the commercial world, can hardly be said to have delegated to Flagg Brothers an exclusive perogative of the sovereign." 436 U.S. at 160, 98 S.Ct. 1729.
[5] The Court's discussion did not refer to the Reitman case relied on by the district court in Adams.
[6] The thrust of Justice Stevens dissent was the incongruence of the majority's focus on the absence of "overt official involvement" to distinguish the prior line of cases, involving pre-judgment garnishments and attachments, which had scrutinized various state creditor-debtor statutes for due process compliance. See Sniadach, supra; Fuentes, supra; Mitchell, supra; and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975)(invalidating Georgia garnishment statute in which the writ was issued by the court clerk, without participation by a judge, based on conclusory allegations not necessarily based on personal knowledge of the facts). The dissent noted that "the very defect that made the statutes in Shevin and North Georgia Finishing unconstitutional lack of state controlis, under today's decision, the factor that precludes constitutional review of the state statute." 436 U.S. at 174, 98 S.Ct. 1729.
[7] The court, citing the pre-Flagg Brothers decision in Adams v. Dep't of Motor Vehicles, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974), stated that a foreclosure of the lien by private sale, in the absence of the statute, would have been regarded as a conversion.
[8] Louisiana's civilian heritage included an abhorrence of self-help in the debtor-creditor relationship and particularly in the lessor-lessee context. Schewe, supra at 258-61 (discussing civilian heritage regarding disdain for self-help remedies). Indeed, the long-standing rule in Louisiana was that a secured creditor could not seize encumbered property without legal process, and when a creditor failed to utilize the judicial remedy and acted on his own, liability for damages arose under La. Civ.Code art. 2315. Schewe, supra at 260.
[9] In La.Rev.Stat. 10:9-503, the Legislature purposely omitted language of the uniform code that authorized the secured party to take possession of collateral if it could be done without breach of the peace. However, La. Rev.Stat. 10:9-504 authorized the secured party, upon the debtor's default, to "sell, lease or otherwise dispose of ... the collateral."
[10] We note that these liens were created through the legislative process, and not through contractual bargaining. Privileges, which are in derogation to the common rights of creditors in the debtor's property, can only be created through legislation. La. Civ. C. art. 3185. The special provisions for private enforcement were also created in the same legislation.
[11] Governmental inaction perhaps presents the most challenging conceptual problems in a state action analysis.
[12] In the absence of the Act, the owner-lessor would have to choose between incurring litigation expenses or foregoing use of the space leased to the debtor (in this case, for $44 per month).